UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Omar Bermudez, | No. 2:22-cv-01246-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| SN Servicing Corporation, | |
| Defendant. | |

Plaintiff Omar Bermudez moves *ex parte* for a temporary restraining order to stop the foreclosure sale of his home in Sacramento, California scheduled for August 4, 2022, at 2 p.m. *See* Mot. TRO, ECF No. 8; Mem. P. & A., ECF No. 8-3. By the time the court finalized this order, defendant had not responded.[1] For the reasons below, the motion is **granted.**

I.    BACKGROUND

Plaintiff obtained a mortgage loan for his single-family home from defendant. Bermudez Decl. ¶¶ 3–5, ECF No. 8-1. In late December 2021, plaintiff received a letter from defendant

---

[1] After the court had signed the order but before it was docketed, defendant did file a voluminous response. ECF No. 11. The court has scanned that response, including the Fogleman declaration and the exhibits thereto, and considered whether to delay issuance of this order. The court's initial assessment is that the response does not wholly undermine plaintiff's motion for a temporary restraining order, although it does raise questions regarding plaintiff's entitlement to a preliminary injunction. Accordingly, the court construes the defendant's filing as its opposition to a preliminary injunction, and maintains the hearing to consider such an injunction set below.

1  indicating he had been approved for a loan modification and that he would soon receive a formal

2  offer, which plaintiff must accept within 14 days of the offer's receipt.  *Id*. ¶ 8.  On January 3,

3  2022, plaintiff received the formal offer with a modified payment plan; the plan's effective date

4  was identified as February 1, 2022, but also required plaintiff to have made an initial good faith

5  payment of $2,948.17 by no later than December 31, 2021, three days before plaintiff even

6  received the offer.  *Id*. ¶ 9 & Ex. B at 1–2.

7        Immediately, plaintiff contacted defendant to inquire about the payment that was due

8  December 31, 2021.  *Id.* ¶ 10.  Two weeks later, Dani Coe, an asset manager employed by

9  defendant, emailed plaintiff to say the "offer is already defaulted" but she would check whether

10  the modified payment plan was still available to plaintiff such that defendant would accept a

11  payment.  *Id.* ¶ 11.  While awaiting Ms. Coe's further response, plaintiff received a letter dated

12  January 17, 2022, from defendant's separate employee Jeff Harrison stating defendant would not

13  grant a loan modification, which seemed not to acknowledge that plaintiff had been granted a

14  modification previously.  *Id*. Ex. D.  On January 25, 2022, Mr. Harrison sent plaintiff a second

15  letter stating he could not grant the loan modification, this time checking a box identifying

16  plaintiff's withdrawal of his request or "non-acceptance of offer," which stated that "Failure to

17  make the first trial period payment in a timely manner is considered non-acceptance of the Trial

18  Period Plan." *Id*. Ex. E.  Also on January 25, 2022, Ms. Coe emailed plaintiff saying he must

19  submit an appeal letter to see if the modified payment plan would be "resurrected." *Id.* ¶ 14.  The

20  current record does not clarify whether plaintiff filed the appeal letter.  Plaintiff does allege he has

21  not made payments to defendant, although he "had been attempting to make" a payment, because

22  he was waiting for Ms. Coe's response regarding the availability of the modified payment plan.

23  *Id*. ¶ 13.

24        On May 23, 2022, plaintiff filed this lawsuit in state court, alleging claims for breach of

25  contract and accounting, and claims under California Civil Code section 2923.7, the California

26  Unfair Business Practices Act, and the federal Real Estate Settlement Procedures Act.  *See* Not.

27  Removal, ECF No. 1.  Defendant removed the case to this court.  *Id.*

1    **II.    LEGAL STANDARD**

2    A temporary restraining order or "TRO" may be issued only upon a showing "that

3    immediate and irreparable injury, loss, or damage will result to the movant before the adverse

4    party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  The purpose of such an order is

5    to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a

6    hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423,

7    439 (1974).  A TRO is an extraordinary remedy, and a plaintiff who requests a TRO must prove

8    that remedy is proper by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

9    In determining whether to issue a temporary restraining order, a court applies the factors

10   that guide the evaluation of a request for preliminary injunctive relief: whether the moving party

11   "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of

12   preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the

13   public interest." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *see Stuhlbarg*

14   *Int'l. Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis for

15   temporary restraining orders and preliminary injunctions is "substantially identical").

16   Alternatively, courts may analyze a TRO request using a sliding scale approach through

17   which the elements of the "test are balanced, so that a stronger showing of one element may

18   offset a weaker showing of another." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131

19   (9th Cir. 2011).  This test requires plaintiffs to demonstrate the requisite likelihood of irreparable

20   harm, show that an injunction is in the public interest, raise "serious questions" going to the

21   merits, and show a balance of hardships that "tips sharply" in plaintiffs' favor. *Id*. at 1131–36

22   ("serious questions" version of the sliding scale test for preliminary injunctions remains viable

23   after *Winter*).

24   **III.    ANALYSIS**

25   **A.    Sliding Scale Approach**

26   Here, the court analyzes the TRO request using the sliding scale approach and finds the

27   applicable standard is met.

1    First, plaintiff has shown immediate and irreparable injury will occur because he will lose

2    his residence if the foreclosure sale proceeds as scheduled on August 4, 2022.  Loss of plaintiff's

3    residence is a sufficient showing of irreparable harm.  *Kilgore v. Wells Fargo Home Mortgage*,

4    2012 WL 2195656, at * 1 (E.D. Cal. June 13, 2012).

5    Second, a decision in plaintiff's favor will serve the public interest by allowing time for

6    this matter to be resolved on the merits, either confirming a foreclosure sale is lawful or

7    precluding a sale as unsupported by the applicable law and factual record.  *See Sencion v. Saxon*

8    *Mortgage Servs., LLC*, 2011 WL 1364007, at * 3 (N.D. Cal. Apr. 11, 2011).

9    Third, plaintiff raise "serious questions" going to the merits.  A borrower may bring an

10   action for injunctive relief to enjoin a material violation of California Civil Code section 2923.7

11   and conduct a related foreclosure sale.  *See* Cal. Civ. Code § 2924.12.   Here, plaintiff alleges

12   defendant violated section 2923.7, which requires that a single point of contact (SPOC) be

13   responsible for "communicating the process by which a borrower may apply for an available

14   foreclosure prevention alternative and the deadline for any required submissions to be considered

15   for these options." *Id.* § 2923.7(b)(1).  The SPOC also must "coordinat[e] receipt of all

16   documents associated with available foreclosure prevention alternatives and notify[ ] the

17   borrower of any missing documents necessary to complete the application." *Id*. § 2923.7(b)(2).

18   Although the SPOC can be a team, each member of the team SPOC must be knowledgeable about

19   the borrower's situation and current status in the borrower's loan modification application

20   process. *Johnson v. PNC Mortgage*, 80 F. Supp. 3d 980, 987 (N.D. Cal. 2015) (citing Cal. Civ.

21   Code § 2923.7(e)).  Moreover, the SPOC must have "access to individuals with the ability and

22   authority to stop foreclosure proceedings when necessary." *Id.*; Cal. Civ Code. § 2923.7(b)(5).

23   Plaintiff here has shown, even if Mr. Harrison were a team member of the SPOC, he did not

24   appear knowledgeable about plaintiff's loan modification application; based on his letter rejecting

25   plaintiff's loan modification application, Mr. Harrison seemed not to know that plaintiff had been

26   granted a modification previously. *Id*. ¶ 12.  Indeed, soon after his first letter, Mr. Harrison sent a

27   separate letter to inform plaintiff he had defaulted on the modified payment plan he had been

28   offered. *Id*. ¶ 13.  Moreover, Ms. Coe appears not to have the authority to stop the foreclosure

4

1    proceeding.  Ms. Coe stated she needed defendant's approval before resurrecting the modified

2    payment plan plaintiff had been offered.  *Id*. Ex. C.  Ms. Coe also later emailed plaintiff that he

3    must submit an appeal letter to defendant in an effort to resurrect the modified payment plan.  *Id.*

4    ¶ 14.  Accordingly, plaintiff has at least raised "serious questions" going to the merits sufficient to

5    support a temporary restraining order.

6           Finally, the balance of equities favors plaintiff: he will likely permanently lose his

7    residence if the sale goes forward.  Given the stakes, plaintiff has not been as diligent as he

8    should have in seeking to stop the foreclosure sale, which he appears to have known about since

9    November 2021.  *See* Supp. Sheparo Decl., Ex. B, ECF No. 10.  Nonetheless, under the

10   circumstances the court finds taking a short period of time to clarify the factual record will ensure

11   the law is followed and the interests of justice satisfied.

12          **B.     Bond**

13          Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a temporary

14   restraining order . . . only if the movant gives security in an amount that the court considers

15   proper to pay the costs and damages sustained by any party found to have been wrongfully . . .

16   restrained."  District courts have wide discretion in fashioning the amount of the bond, and "the

17   bond amount may be zero if there is no evidence the party will suffer damages from the

18   injunction."  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882

19   (9th Cir. 2003).

20          Here, the court finds plaintiff is not required to post a bond because there is no evidence in

21   the record that defendants will suffer damages from the issuance of the restraining order.  *See*

22   *Sencion*, 2011 WL 1364007, at * 3 (where next hearing was set to occur in short period of time,

23   plaintiff "not [ ] required to post a bond at this time.").

24   **IV.    CONCLUSION**

25          Plaintiff's motion for TRO is **granted.**  Defendant and its agents are enjoined by this TRO

26   from conducting a trustee sale of plaintiff's residence located at 864 Oak Lane, Rio Linda, CA

27   95673.  The TRO granted here shall expire on August 17, 2022, absent further order of this court.

1    The court will hear plaintiff's motion for a preliminary injunction on **August 17, 2022 at**

2  **2:00 p.m.** in Courtroom 3.  While the court construes defendant's filing of August 3, 2022 as its

3  opposition to a preliminary injunction, the defense may supplement its filing with a brief of up to

4  10 pages to be filed no later than August 10, 2022, at 12:00 p.m.  Plaintiff may file a reply of up

5  to 10 pages, not including attachments, by August 15, 2022 at 12:00 p.m.

6    This order resolves ECF No. 8.

7    IT IS SO ORDERED.

8  DATED:  August 3, 2022.

CHIEF UNITED STATES DISTRICT JUDGE